# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6804 | **DATE** | 8/30/2001 |
| **CASE TITLE** | Anderson vs. BASF Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to dismiss [9-1] as to Counts I and II is granted without prejudice. Defendant's motion to dismiss [9-1] as to Count III is denied. Defendant's motion to strike portions of Counts IV and V [9-2] is granted in part and denied in part. Plaintiff's are to file an amended complaint by 9/26/01.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | date docketed | 18 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | SEP 0 4 2001 docketing deputy initials | |
| | Mail AO 450 form. | FILED FOR DOCKETING | | |
| | Copy to judge/magistrate judge. | 01 AUG 31 AM 10: 12 | 8/30/2001 date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION


DOCKETED
AUG 04 2001

| | |
|---|---|
| MARK A. ANDERSON and <br> DONALD R. ANDERSON, <br><br> Plaintiffs, <br><br> v. <br><br> BASF CORPORATION, a Delaware corporation, <br><br> Defendant. | 00 C 6804 |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Mark A. Anderson and Donald R. Anderson, both Illinois citizens, filed a complaint against BASF Corporation ("BASF"), a Delaware corporation, for breach of contract (Counts I & II), violation of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115 *et seq.* (Count III), and violations of the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1161 *et seq.*, which amended and is part of the Employee Retirement Income Security Act of 1974 ("ERISA"). BASF moves to dismiss counts I through III and to strike portions of Counts IV and V. The court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332. For the reasons set forth herein, the court grants in part and denies in part BASF's motion to dismiss and grants in part and denies in part BASF's motion to strike.

## BACKGROUND

Until at least June 1, 2000, plaintiffs were both employed by Chemdal Corporation ("Chemdal"), a manufacturer of superabsorbent polymers used primarily in the manufacture of diapers and other personal hygienic products (the "SAP Business"). Chemdal was owned by Chemdal International Corporation, which in turn was owned by AMCOL International Corporation ("AMCOL"). On or about November 22, 1999, AMCOL entered into an Asset and Stock Purchase Agreement ("Purchase Agreement") with BASF Aktiengesellschaft ("BASF AG"), wherein the Sellers, which included AMCOL and AMCOL affiliates transferring SAP assets, agreed to sell the SAP Business to BASF AG, the Purchaser.

According to plaintiffs, pursuant to the terms of the Purchase Agreement, the sale would not result in severance of employment for "transferred employees" such as themselves. Rather, each such employee would have continuous and uninterrupted employment before and after the closing. Also, plaintiffs allege that under the Purchase Agreement, defendant BASF, as the designated affiliate of BASF AG, agreed to assume the liabilities of Chemdal, and agreed to be responsible for any severance obligations incurred pursuant to Chemdal's severance policies with respect to the termination of a transferred employee on or after the closing. For purposes of the sale, the Sellers attempted to summarize their severance policies in an attachment to the Purchase Agreement, which indicated that Chemdal Vice Presidents were entitled to 9 months of severance and that other Chemdal officers were entitled to 6 months of severance. Plaintiffs assert, however, that the severance policies as to officers were normally unwritten, and that in actuality, Chemdal officers were given a minimum of 18 months severance and a like number of months of health and dental insurance benefits.

Plaintiffs allege that when the sale took place, on or about June 1, 2000, they became BASF employees, but that after the closing, BASF offered plaintiffs positions on terms considerably less advantageous than the terms that plaintiffs were receiving with Chemdal. Plaintiffs did not accept the offers, but did not resign. BASF subsequently terminated them. Plaintiffs demanded the severance benefits provided by Chemdal's polices and practices, but BASF refused to pay. In Counts I and II, plaintiffs seek to recover severance benefits for breach of contract.

Plaintiff Donald Anderson also alleges that on or about June 16, 2000, Deborah Halbfoster ("Halbfoster") of BASF advised him that he had 40 days of vacation as a result of the merger. BASF has since refused to pay plaintiff for five of those 40 days, contending that he is entitled to only 35 days of vacation. In Count III, Donald Anderson seeks to recover the five days vacation pay, and attorneys fees and costs, for violation of IWPCA.

Plaintiffs further allege that BASF terminated Mark Anderson on June 13, 2000 and Donald Anderson on June 19, 2000. Plaintiffs claim that their terminations constitute "qualifying events" under COBRA, triggering BASF's and its plan administrator's obligation to notify plaintiffs of their COBRA rights within 44 days, but that plaintiffs were not notified of their rights until September 11, 2000. As a result, plaintiffs were forced to obtain health insurance for themselves and their families at their own expense. In Counts IV and V, plaintiffs seek various forms of relief for the alleged COBRA violations.

## DISCUSSION

### I. Defendant's Motion to Dismiss Counts I - III

Defendant moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss both plaintiffs' breach of contract claims (Counts I & II) and plaintiff Donald Anderson's IWPCA claim (Count III). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no facts in support of its claim that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 101, 102 (1957); *Kennedy v. Nat'l Juvenile Det. Assoc.*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on the motion, the court accepts as true all well pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in favor of the plaintiff. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999); *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996).

**Breach of Contract Claims (Counts I & II)**

Defendant argues that Counts I and II should be dismissed because plaintiffs' complaint fails to plead facts to support most of the requisite elements of a breach of contract claim. In order to state a claim for breach of contract under Illinois law,[1] a plaintiff must allege: (1) the

---

[1] Although the Purchase Agreement provides that it shall be construed in accordance with Delaware law, *see* Compl., Ex. A § 11.11, both parties have relied primarily on Illinois law and do not assert a choice of law issue. *Massachusetts Bay Ins. Co. v. Vic Koenig Leasing, Inc.*, 136 F.3d 1116, 1120 (7th Cir. 1998) ("'The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the court sits[.]'") (quotation omitted). Likewise, although the Purchase Agreement provides that actions relating to the Purchase Agreement "shall be heard and determined in any Delaware state or federal court sitting in Wilmington," *see* Compl., Ex. A § 11.11, the parties have acquiesced to litigation in this court, *see Van*
(continued...)

existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff. *Gonzalzles v. American Express Credit Corp.*, 733 N.E.2d 345, 351 (Ill. App. Ct. 2000); *Carroll v. Acme-Cleveland Corp.*, 955 F.2d 1107, 1114-15 (7th Cir. 1992).

Plaintiffs concede in their response that they are not parties to the Purchase Agreement but argue that they are third-party beneficiaries. Under Illinois law, a third-party beneficiary may bring an action to remedy the breach of a contract only if the parties to the contract specifically intended the third party to benefit from the agreement. *Golden v. Barenborg*, 53 F.3d 866, 870 (7th Cir. 1995) (citing *Carson Pirie Scott & Co. v. Parrett*, 178 N.E. 498, 501 (Ill. 1931)). "If the benefit is merely incidental, the third person has no right of recovery arising from the contract." *Id.* The parties' intent is manifested through the language of the contract. *Id.* "[T]here is a strong presumption that parties to a contract intend that the contract's provisions apply to *only* them and not to third parties." *Quinn v. McGraw-Hill Cos.*, 168 F.3d 331, 334 (7th Cir. 1999) (quoting *155 Harbor Drive Condo. Ass'n v. Harbor Point, Inc.*, 568 N.E.2d 365, 375 (Ill. App. Ct. 1991)). To overcome this presumption, "[e]xpress language in the contract identifying the third-party beneficiary is the best evidence of intent to benefit that party," but intent can also be shown by an implication so strong as to amount to an express declaration. *Id.* "Without an express declaration . . . ambiguous language in a contract will not suffice to make

---

¹(...continued)
*Den Biggelaar v. Wagner*, 978 F. Supp. 848, 856 (N.D. Ind. 1997) (party waived forum selection clause by litigating in another forum), and, in any event, any defense based on venue or lack of personal jurisdiction was required to have been brought with the instant motion to dismiss. *See* Fed. R. Civ. P. 12(h)(1) (defenses of personal jurisdiction and improper venue are waived if not included in preliminary motion under Rule 12(g)); *Graff v. Nieberg*, 233 F.2d 860, 865 (7th Cir. 1956) (personal jurisdiction); *Elbinger v. Precision Metal Workers Corp.*, 18 F.R.D. 467, 468-69 (E.D. Wisc. 1956) (improper venue and personal jurisdiction).

someone a third-party beneficiary." *Id.* Whether a plaintiff is a third-party beneficiary is a legal conclusion that the court need not accept for the purpose of a motion to dismiss. *See Choi v. Chase Manhattan Mortgage Co.*, 63 F. Supp. 2d 874, 881 (N.D. Ill. 1999).

Plaintiffs argue that the language in the Purchase Agreement providing that BASF would be responsible for severance obligations incurred pursuant to Chemdal's severance policies after the closing manifests the parties' intent to benefit transferred employees, such as themselves. Pls.' Resp. at 5 (citing Compl., Ex. A § 6.02). Defendant argues the parties expressly disclaimed third-party beneficiary status and cites to a provision in the Purchase Agreement entitled "Third Party Beneficiaries," which provides:

> Except for the provisions of Article IX and Article VII relating to Indemnified Parties, (a) the provisions of this Agreement are solely for the benefit of the parties and are not intended to confer upon any Person except the parties any rights or remedies hereunder and (b) there are no third party beneficiaries of this Agreement and this Agreement shall not provide any third Person with any remedy, claim, liability, reimbursement, claim of action or other right in excess of those existing without reference to this Agreement.

*See* Compl., Ex. A § 11.08. The court concludes that the clear import of this provision is that, other than the types of third-party claims for which indemnification is provided under Articles IX and VII, there are no third-party beneficiaries to the Purchase Agreement. *See Golden*, 53 F.3d at 870 ("The contract at issue here expressly states that it confers no rights on any party not a party to the contract."). Plaintiffs do not contend, nor do the allegations of the complaint suggest, that their claims conform to the types of third-party claims for which indemnification is provided under Articles IX[2] and VII.[3] Instead, plaintiffs assert that the disclaimer provision does not bar

---

[2] Article IX provides that AMCOL agrees to indemnify BASF AG or its affiliates for

(continued...)

but, rather, supports their claims, explaining that the last clause – "this Agreement shall not provide any third Person with any claim . . . *in excess of those existing without reference to this Agreement*" – means that third parties would have no rights greater than those existing by virtue of the Agreement. Pls.' Resp. at 1, 5. In other words, they argue that because their claims are dependent on the Purchase Agreement, they are permitted.[4] Plaintiffs' reading is contrary to the plain meaning of the language. The phrase could only be read as plaintiffs contend if the words "in excess of those existing" were read out of the phrase. Such a reading, however, would depart from the rule of contract construction that requires the court to, if possible, give effect to all of the contract's words. *See Bank of Am. Nat'l Trust and Sav. Ass'n v. Schulson*, 714 N.E.2d 20, 24 (Ill. App. Ct. 1999) (citing, *inter alia, Martindell v. Lake Shore National Bank*, 154 N.E.2d 683

---

[2](...continued)
any and all Liabilities or Losses suffered or incurred by the Purchaser or [Chemdal] . . . or the SAP Business, including by reason of or in connection with any claim or cause of action of any third party, to the extent arising out of any action, inaction, event, condition, liability or obligation of [Chemdal] . . ., the Sellers or the SAP Business occurring or existing prior to the Closing, but only to the extent that the existence of such Liability or Loss constitutes a breach by the Sellers of their representations and warranties in this Agreement; . . . .

Compl., Ex. A § 9.02(v). Article IX also provides that BASF AG agrees to indemnify AMCOL or its affiliates for

any claim arising out of the employment or discharge at any time on or after the Closing Date by the Purchaser [or Chemdal] . . ., of any employee listed on Section 6.01 of the Disclosure Schedule and Section 6.08 of the Disclosure Schedule attached hereto or otherwise, including, without limitation, any failure by the Purchaser to satisfy its obligations under Article 6 hereof, and any severance amounts payable to such employees arising as a result of his or her discharge or termination of employment by the Purchaser [or Chemdal] . . ., following the Closing Date; . . . .

*Id.* at § 9.03(v). While section 9.03(v) contemplates indemnification for BASF AG's failure to satisfy severance obligations under Article 6, it does so with respect to claims against AMCOL or its affiliates, for which AMCOL in turn could seek indemnification from BASF AG. Plaintiffs (even assuming they were included in the specified sections of the Disclosure Schedule) have not sued AMCOL or its affiliates, but have sued BASF.

[3]Article VII deals with tax matters.

[4]None of the cases cited by plaintiffs involved an express disclaimer. *See Moriarty v. Hills Funeral Home, Ltd.*, 93 F. Supp. 2d 910 (N.D. Ill. 2000), *rev'd*, 256 F.3d 554 (7th Cir. 2001); *Brown v. Keystone Consol. Indus.*, 680 F. Supp. 1212 (N.D. Ill. 1988); *Grazier v. Davy Dravo Div.*, 1991 WL 432053 (W.D. Pa. Feb. 11, 1992).

(Ill. 1958)). Reading the phrase as a whole, the court concludes that the plain meaning is that a third party has only those remedies he would have if the Purchase Agreement did *not* exist. That is, the parties did not intend that the Purchase Agreement provide an independent basis of liability to third parties. Therefore, the court dismisses Counts I and II for failure to adequately allege breach of contract claims as third-party beneficiaries under the Purchase Agreement.

**Illinois Wage Payment and Collection Act Claim**

Defendant next moves to dismiss Count III brought on behalf of plaintiff Donald Anderson pursuant to IWPCA, 820 ILCS 115/5. Section 5 of IWPCA requires an employer to make a final compensation payment to any separated employee no later than the employee's next regular pay day and requires that

> whenever a contract of employment or employment policy provides for paid vacation, and an employee resigns or is terminated without having taken all vacation time earned in accordance with such contract of employment or employment policy, the monetary equivalent of all earned vacation shall be paid to him or her as part of his or her final compensation at his or her final rate of pay[.]

820 ILCS 115/5. Defendant argues that plaintiff fails to allege an employment contract or policy providing for paid vacations, and fails to allege that plaintiff earned the additional five days of vacation in accordance with such contract or policy. Plaintiff responds that he does not know how BASF calculated and allocated vacation days to the transferred employees, such as himself, and knows only what was included in the Purchase Agreement and verbally represented to him after the sale. The provisions of the Purchase Agreement to which plaintiff refers provide that the "Purchaser shall provide . . . Transferred Employees . . . with paid vacation time . . . for all vacation earned and unpaid through the Closing Date," Compl., Ex. A § 6.03(d), and "[f]or a period of one year after the Closing Date, the Purchaser shall provide the Transferred Employees

8

... with a level of employee benefit plans ... substantially comparable ... to the level of employee benefits provided to similar [sic] situated employees of the Purchaser." *Id.* at § 6.03(a). Plaintiff also asserts that after the closing BASF verbally told him that he would receive 40 days of vacation pay.

Although the provisions of the Purchase Agreement do not constitute the employment contract or policy regarding vacation pay,[5] one could infer from the allegations in the complaint that BASF had an agreement or policy providing for paid vacations, that the agreement or policy was applicable to plaintiff, and that plaintiff earned in accordance with that agreement or policy, the vacation time he seeks. Namely, plaintiff was a BASF employee after the closing, and, shortly after the closing, BASF's Halbfoster specifically told him that "he had 40 days of vacation pay as a result of the merger." Compl. ¶¶ 25, 38. Subsequently, after BASF terminated him, his final compensation included the monetary equivalent of accrued vacation pay, and BASF paid him for 35 of those 40 days. *Id.* at ¶¶ 37, 39. Indeed, BASF concedes that it paid plaintiff 35 days of accrued vacation time upon his separation. *See* Def.'s Reply, at 6 n.3. Presumably, in order to pay out any vacation time to plaintiff, BASF did so pursuant to a policy or agreement providing for such paid vacations that was applicable to plaintiff. Moreover, merely because plaintiff was provided conflicting information as to the amount of paid vacation to which he was entitled, does not mean he cannot prove that he actually earned the additional five days of vacation time in accordance with the BASF policy or agreement. If Halbfoster's statement that he was entitled to 40 days is true, then presumably plaintiff earned those days, and

---

[5] Any third-party claim for vacation pay is barred by the express disclaimers in the Purchase Agreement. *See* Compl., Ex. A §§ 6.03(e), 11.08.

9

did so in accordance with the BASF policy or agreement. Therefore, the court denies BASF's motion to dismiss Count III.

## II. Defendant's Motion to Strike Allegations in Counts IV and V

Defendant asks the court to strike several allegations of plaintiffs' COBRA claims in Counts IV and V. On a motion to strike made pursuant to Federal Rule of Civil Procedure 12(f) "the court may order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The court generally disfavors motions to strike, *WTM, Inc. v. Henneck*, 125 F. Supp. 2d 864, 869 (N.D. Ill. 2000), and should strike portions of the complaint only if "the language in the pleading has no relation to the controversy and is unduly prejudicial." *Circuit Sys., Inc. v. Mescalero Sales, Inc.*, 925 F. Supp. 546, 548 (N.D. Ill. 1996) (citation omitted).

Defendant first asks the court to strike plaintiffs' request to fine BASF under the Internal Revenue Code arguing that plaintiffs lack standing to pursue such fines and to strike plaintiffs' request to compel BASF to offer plaintiffs retroactive coverage to the date of their terminations arguing that plaintiffs already received such an offer. Plaintiffs agree and have withdrawn their request for such relief. Pls.' Resp. at 3 n.1, 9. Therefore, the court strikes plaintiffs' requests in Counts IV and V for fines under the Internal Revenue Code and for an offer of retroactive coverage.

Defendant next asks the court, assuming the court has dismissed Counts I and II, to strike paragraphs 41 and 47 of the complaint, as irrelevant to Counts IV and V and burdensome to the court and BASF. Paragraph 41 in Count IV (Mark Anderson's COBRA claim) realleges paragraphs 1-14 and 16-23 of the complaint. Paragraph 47 in Count V (Donald Anderson's

10

COBRA claim) realleges paragraphs 1-14 and paragraphs 25-34. The court declines to strike these allegations. In the first instance, paragraphs 1-14 and 25-34 remain in the complaint pursuant to paragraph 35 in Count III, which this court has not dismissed. Given that defendant will be answering these allegations, to have defendant further answer the allegations in paragraphs 16-23 (those realleging facts contained in Mark Anderson's breach of contract complaint in Count IV) will not significantly burden the record or BASF. Moreover, both parties agree that, at the least, in order for plaintiffs to prove their COBRA claims, they must establish a "qualifying event." Plaintiffs have asserted that their terminations constitute qualifying events. Although there are some allegations regarding Mark Anderson's termination in Count IV, defendant has not persuaded the court that any of the allegations in paragraphs 16-23 will have no relation to plaintiff's COBRA claim. Therefore, the court denies the motion to strike paragraphs 41 and 47 of the complaint.

## CONCLUSION

For the reasons explained above, the grants defendant's motion to dismiss [#9-1] as to Counts I and II without prejudice, but denies the motion as to Count III. The court also grants in part and denies in part defendant's motion to strike portions of Counts IV and V [#9-2], as set forth above. Plaintiffs are to file an amended complaint by September 26, 2001.

Date: August 30, 2001          Enter: _____
                               JOAN HUMPHREY LEFKOW
                               United States District Judge